Mr. Tedesco, we'll hear from you. Good morning, Your Honors. My name is Jeremy Tedesco, and I represent the appellants in this matter, Little Pencil, L.L.C., and David L. Miller. Your Honors, this case is about viewpoint discrimination and unbridled discretion, not tattoos. The plaintiff's advertisement does not violate the policies the school district relies on regarding tattoos. Those policies apply only to students and employees, and they say that they can have tattoos, but that they must be covered. The plaintiff's advertisement does not violate these policies because it does not depict a student or an employee. In addition, and in fact, Your Honors, no school district policy, including especially important here, policy GKB, which is the policy that governs the advertising form at issue in this case, bars an ad like the plaintiff's, which uses allegorical tattoos to advertise the company's message and purpose. Nonetheless, when the school district objected to the tattoos in the advertisement, the plaintiff's offered to run the advertisement without the tattoos, and the school district immediately responded that the ad would still be denied, raising concerns, misplaced concerns, albeit, about endorsement under the establishment clause, and that allowing the ad would endorse the Christian religion. And that's the reason we're here before this court today, for determination of whether the school district's religious viewpoint discrimination, which occurred as a result of a policy that grants unbridled discretion to the superintendent to approve or deny advertisement requests, violates the Constitution. And it clearly does. The plaintiff's advertisement in this case is just like many other of the non-school-related organization advertisements in the case. Its purpose is to drive people to a website where people can get more information about the organization, engage its services, buy products, and many other organizations' advertisements in the form do the same thing. It was the religious perspective of this advertisement that resulted in its exclusion from the form, and that's clearly viewpoint discrimination. I think another key point, Your Honors, is that the forum has been expressly open to religious speech and speakers. The school district has approved ads from religious colleges, nonprofit religious colleges, and churches. The church advertisements invite people to church services. Does your client have any business other than the religious aspect? It has services that it provides, biblical counseling, that people can engage when they go to their website, and they can also buy products related to their message and purposes in the organization, which is ultimately to ensure that people understand that the Bible and its teachings are evidenced by which people... Does it have anything to do with tattooing or tattoo studios or anything like that? Well, the advertisement that you go to on the... The advertisement, of course, is the Jesus Tattoo advertisement. When you go to the organization's website, you can see a video which depicts allegorically using tattoos to convey the purpose of the company. So when your client suggested it would change its ad or whatever, it didn't offer to change its name or any of the rest of its activities related to tattooing? Well, the name of it doesn't do any... It actually doesn't do any tattoos at all. It just uses allegorical tattoos to convey its message. But its offer to remove the tattoos from the advertisement obviously was genuine, and the school district responded to that offer immediately by saying what was the real reason for the exclusion here, and that was the religious viewpoint expressed by the advertisement. But, Your Honor, I would say that the plaintiffs would be willing to offer an advertisement that complied with the tattoo policy if the school district had one. But the key here is they don't have one. What they have is There's a state law that prohibits tattooing of minors, is there? The state law does prohibit the tattooing of minors. But, I mean, it's the entire message. Your organization is a group of people that are conveying a message about the saving power of Jesus Christ, as I understand it. And is that message conveyed only through the allegory that Jesus can remove the negative tattoos from your soul? Is that your entire allegorical image of what you're trying to say? No, in fact, the plaintiffs have other advertising campaigns that they have developed and currently have in development. So they are, tattoos are not... That's just one facet of the way you're trying to reach people. That's correct, Your Honor. And I think it's important here that the school district has stipulated that churches are invited into the forum. They even stipulated that they solicit ads from churches. I thought they said on that that they do in terms of when the church is going to meet and services are available and that sort of thing. Is that true? No. They don't convey a message like Jesus saves or a particular religious message, or do they? Well, I think any sign, first of all, that there's a sign that invites people to the Bethany Baptist Church, another one of the religious signs... That answers my question, though. Another, yes, they do convey religious messages. Okay, what, like what? One of the signs that hangs in the facility, the basketball facility... No, I'm talking about the Jumbotron. The Jumbotron? Jumbotron. Oh, there hasn't been a, the stipulation is that they have actively solicited ads from churches. We don't know what ad, there hasn't been an ad... Are there ads on the Jumbotron for churches? There haven't been to this point, but they've stipulated that they solicit, actively solicit churches to place advertising in Saddle Lowry Field, which includes the Jumbotron. Okay. But the entirety of the forum is... Well, that's the whole point right there, is the entirety of the forum. What forum are we talking about? Is it only the Jumbotron, or what is the forum? Well, it's the entirety of the advertising in the forum. Why do you say that? I mean, it seems to me, why is that the forum? The specific forum that you advertised and you tried to get on was the Jumbotron. Two reasons, Your Honor. First of all, the school district makes no distinction. They don't treat the Jumbotron any different than any other aspect of their advertising forum. They simply have a policy that says any non-school related organization can use school facilities to advertise for any non-school related purpose. So they treat all the advertising forums under the same policy. In the plaintiffs... Have you tried to approach any forum other than the Jumbotron? Well, that would be futile under the circumstances because they said... Just answer my question. You have not done it. We have not done that. But we have indicated in the complaint and in an affidavit our desire to have those advertisements in the entirety of the advertising forum. Any of the channels of communication available, our plaintiffs would like to have their advertisements. And the reason they didn't submit advertisements for other aspects of the forum is because the school district said that they had violated the assumption. Why is it important to your case to broaden the forum to all means of advertisement to the school sponsors as opposed to the Jumbotron? I'm sorry. You're right. Why is that important to your case? In other words, why does that strengthen your case to broaden the forum as opposed to limit it to the Jumbotron? Well, I ultimately think we win either way, whether you look at the Jumbotron or the advertising forum. You know, ask a question. It strengthens—I don't know that I would say, Your Honor, that it strengthens the case. My point about the entirety of the forum is the policy is the same for every avenue of communication in the forum. So how the school district operates in practice in proving and denying ads in every avenue within the forum matters to the case. But even if you look at the Jumbotron— But you're saying that it doesn't matter. But you also said it doesn't matter. You're saying that the result will be the same irrespective of the forum. So why can't we limit it to the Jumbotron? You can, Your Honor, and under those circumstances— Okay. And under those circumstances, it would still clearly be viewpoint discrimination. Okay. The plaintiffs stipulated that they are a for-profit company. The defendants in the court below admitted, conceded, that the ad is a commercial advertisement. And it's on behalf of a for-profit company. And like I said before, they have—they're trying to achieve the same thing every other for-profit company is. They're trying to raise awareness about their company and their purposes in the products and services that they provide. And they're doing so through an advertisement that they want to display in a forum that's broadly open to any non-school-related organization to advertise for any non-school-related purpose. And under those circumstances, denying the ad because of its religious perspective is a viewpoint discrimination. In addition, Your Honor— So, I mean, is this—and you are contending that this is a public forum? Is that what you're contending? Well, the district court found it's a limited public forum, and the school district has to— I mean, I ask a question. What is your contention? Are you contending that it's a public forum, a limited public forum? What is your contention? My contention is that it is at least a limited public forum. I think the court can find that it's a designated public forum, considering how broadly it's been open. But it ultimately doesn't matter because the viewpoint is— Okay, if it's a designated forum, what is it designated for? It's designated for the white community of non-school-related organizations. As the school district has stipulated, that includes both for-profit and non-profit organizations, and as the policy states, to advertise for any non-school-related purpose. So it is a very broad forum. But again, as I said, it ultimately doesn't matter because the viewpoint discrimination in this case would violate the First Amendment, regardless of the forum's classification. And I think it's key to look at the district's establishment clause, the lower court's establishment clause ruling, and the school district's reliance on the establishment clause. Under the circumstances of this case, there is simply no valid establishment clause concern. And I would take this court to this court's decision in Morgan v. Swanson, where I'm quoting here. It said that school officials need not fear an establishment clause violation from allowing schoolchildren with religious views to speak under the same reasonable viewpoint-neutral terms as other students. That's the principle that governs this case. It's the principle that the Supreme Court relied on in Wittenberg, Good News, Lamb's Chapel, Rosenberger. In all those cases, a policy, a neutral policy of equal access poses no establishment clause whatsoever, whether endorsement or otherwise. And so under the circumstances of this case, there is no valid establishment clause defense. And that's all that the school district has to try to justify their actions. So are you saying then that the school is obligated by opening the Jumbotron to commercial advertising that they have to take any and all advertisements that come their way? Anybody? Okay. How can they limit the advertisements that appear on their property, that is the Jumbotron? Well, there are plenty of categories of speech. They can engage in subject matter and speaker identity exclusions. They can restrict vulgarity, obscenity. Obviously, that kind of thing. But I mean, what sort of subjects can they – anybody that wants to advertise a legitimate product in acceptable, civilized terms, they must take it, you see. Well, under those circumstances, if it's not an illegal product, I think that's probably true. So they have to take anything. They have no control whatsoever over their Jumbotron as to who can advertise on it. Well, they do have control. What is that control? They can bar ads that promote illegal activities. Well, I know that, but I mean, I'm talking about – I'm assuming legal subject matter, legal activity. There's many things they can do. Anybody that wants to advertise, from automobile mechanics to farmers to anything. Sure, but they can limit the form to certain subjects. To beer, whiskey. I mean, anything they want to advertise there. It's not anything that goes. The school district has the ability to enact subject matter and speaker identity exclusions. So they can say the forum is only open to people who advertise athletic events. And then as long as you fit within that subject matter, you can be in the forum. Well, I thought they had said that they don't take any religious messages. No, Your Honor. The forum is expressly open to religious speech. But saying that religious speech – Well, I don't understand that. I mean, that's not – I don't understand that to be their position. Well, they just stipulated that they solicit ads from churches. I know, but that's not a religious message necessarily, is it? I understood that on the Jumbotron they have not solicited or accepted ads for religious purposes. Is that right or wrong? I'm sorry, Your Honor, I didn't understand that. With respect to the Jumbotron, they have not – the school has not solicited or accepted ads for religious purposes. Is that – They've solicited ads from churches. They've stipulated that. But this is a viewpoint discrimination case. So ultimately – For the Jumbotron or for the – I think there are other signs that they're church ads on. But for the Jumbotron itself, is that – have they made that open to other churches or for any other religious purposes? They've solicited ads from churches and they've allowed Lubbock Christian University, which is a Christian university that exists to promote the gospel, to its students in the broader culture to advertise on the Jumbotron. So it's clearly open to religious organizations and religious-related speech. But I think the most important thing is even if they were to bar religion as a subject matter – I see my time is up. Can I respond to this question? Sure. Even if they were to bar religion as a subject matter, that doesn't satisfy the viewpoint neutrality requirement. And here, as I already stated, the plaintiff's advertisement is similar in all respects to many of the non-school-related organization advertisements in the forum. They're trying to promote awareness and drive people to a website. And it's the religious perspective of their ad that has resulted in this situation. Thank you, Your Honor. Yes, sir. Thank you. Ms. Manning, representing the Lubbock School District. Good afternoon. Good morning. May it please the Court. Ann Manning, representing Lubbock Independent School District. I would like to focus on a key issue, and that is the reasonableness of the district in the district's denial of the Jesus Tattoo ad based on tattoos. As has already been stated, this is under state law. Under the Texas Health and Safety Code, the legislature has determined that it is unsafe for a minor to be given a tattoo. So they give criminal penalties to any tattoo artist who places a tattoo on a minor. Also, if the minor lies about his age or her age, then criminal penalties also for the minor. Parental consent is only allowed to cover an existing tattoo, not for a new tattoo. So, therefore, our policy is grounded under state law. And we have a no visible tattoo policy so that we will be complying. We try to teach our students to comply with the law. In that regard, we deny the tattoos based on our policy and state law, just as we would deny a Cruse Beer ad. If they came and said, we have a great ad for you, and we're going to pay you lots of money, it's against state law for a minor to drink, and it's in our policy for them not to consume alcohol, at least at school or a school-sponsored activity. Even if it was a wonderful Budweiser commercial with a little puppy, we would still deny based on those facts. A school district had provided the court with a picture of the advertisement. On the face of this ad, Your Honor, we had no offer to remove the tattoos in writing. If they had removed all the tattoos off of Jesus, jesustattoo.org would still be- What is the message on that? Your Honor, it is Jesus with his arms outstretched, a nail hole in his hand, a crown of thorns on his head, with the words hated, outcast, addicted, jealous, faithless. And that's all it says besides jesustattoo. There's nothing on there that is an advertisement. There's nothing on there that says anything except a religious message on the face of the ad. With that, Your Honor, we are proprietors, as a role of advertisers, in advertising under LeBron v. National Railroad and under the Uptown Pond case, which was cited in the amicus brief. In an advertising situation, a school district has the right to control that venue. And in our policy, you will note that it says this is a commercial venue. It is not a forum for communication. It is to defray expenses. And then we have approval has to be by the superintendent within the guidelines of the First Amendment. So in that regard, with the Jumbotron, we have determined that that is for commercial purposes. One reason for that, we're at a high school football game, and we're having plays shown on that Jumbotron and replays shown on the Jumbotron in a limited amount of time for the commercials. And those are strictly commercials to defray those expenses. And with regard to the scope, as you had discussed earlier, it is the Jumbotron. That's all they ask for. They made the request in July. It was turned down at the end of October, first of November, and they filed suit in January. They never made a request to put it in any other venue. Well, does the district solicit ads for the Jumbotron by other religious institutions regardless of whether they express religious messages? Your Honor, we do solicit commercials, commercial advertisements from wide varieties, including churches. But in that regard, Your Honor, it does have to go through the superintendent's approval. They have to be commercials on the Jumbotron. This is not a commercial. If it was Bethany Baptist Church, 40th and Quaker, that may be considered a commercial. And there is a difference. And the district has the ability as this proprietor to even change. Under the Uptown Pond case versus City of Hollywood, the court said they had the lower end advertisements on the benches, and they wanted to change it to higher ends. The lower end happened to be the tattoos and alcohol. And they wanted to change it to the higher end so they could make more money. And the court said, as a proprietor, you can do that. You are the proprietor. It's commercial. It's a commercial venture. And that's the situation that we are in. And with the – in this particular forum, we are, as the district court said, it's a limited or nonpublic forum because it does not – CHU versus Plano ISD set out the tests. And they said if it's going to be a designated public forum, it's got to have a clear intent to be a designated public forum. Our clear intent was that it was not in our policy. It is not to be a forum for communication. So, therefore – and also, Your Honor, there's no other ad on that jumbotron that's not controlled by the superintendent as far as how that is controlled and what is put on that particular jumbotron. Under the limited public forum, we use a reasonableness test, not the strict scrutiny test. And under the reasonableness test, we first look at the tattoos. And we could really stop walking. If it was found to be reasonable because it was tattoos and it did not meet – it was a violation of state law and policy, then that would be all. But there are other reasons that can be considered by the court, and that is a conflict with the establishment clause. And we rely heavily on Santa Fe versus Doe. It is so parallel except for the fact that in Santa Fe, it was student speech, student prayer, which is usually so guarded. It's just very narrowly regulated, as spoken by Justice Alito in the concurrence in Morris v. Frederick, where it's limited to disruption under Tinker and lewdness under Frazier and school publications under Hazelwood and illegal drug use under Morris v. Frederick. And this court came in with Potts v. Socorro and extended that somewhat to the safety aspect. But that was student speech. This is commercial. We are in a situation where it's Friday night lights in Texas, and we have all the people come in, not just for one ballgame. We have four high schools there. And so each high school uses this one particular stadium and one particular jumbotron. And we have a captive audience. We have students who have to be there, football players for credit. Also, the Palm Squad has to come for credit. And then we have the families. In other words, it's a big deal. It is a big deal. And even unlike Santa Fe, Santa Fe, the prayer was at the beginning. In our football game, the commercials run interspersed during the game after they watch the plays and the replays. And with that, all of a sudden, that commercial will flash. And if we put up this particular ad in the middle of a very controlled school-sponsored football game, there is no way for anyone to have an opportunity. It is totally captive. And with that, the Supreme Court has said, and it was quoted in Chu, we've got to be very careful. Pardon me, Hazelwood. We've got to be very careful with elementary and secondary students in being able to protect the establishment class, protect them from our endorsing a particular religion over another. And with that, there was disruption of controversy. Needless to say, here we are with some controversy. Of course, we were concerned if we put it up, we might have the ACLU suing us. It was controversial. Also, the ad is controversial from both perspectives of a Christian, either in favor or there were ads, which are in the record, that showed that people said it was blasphemous. So with that, we look at how reasonable this is. It is content-neutral because there are no other ads like this on the Jumbotron. There's nothing to compare it to. We are not discriminating viewpoint by viewpoint in any regard. And so, therefore, we believe that it stays under the reasonable standard, under the limited or nonpublic forum, and then, therefore, the judgment of the district court should be affirmed on that basis. Also, if it was a designated public forum, then in that regard, there is a compelling interest. Just as we spoke about the football stadium, about the captive audience, under the Lemon v. Kurtzman and the Lemon test, under the second prong, it says there should be no endorsement of a particular religion. And this doesn't pass the test. And that's – we limit it to commercials because of the type of forum we have, because of that nature of the forum. This is not an appropriate forum to have religious messages such as this going through, just commercials. And that is limited because most people probably don't even want to do the commercials, for that matter. But we do use that to defray our expenses that we have. The plaintiffs talk to us about vagueness, vagueness in our policy, and we believe our policy is not vague. First, it's an advertising policy, and that's important with advertising. But it sets out the criteria for the superintendent. We couldn't list every issue on the First Amendment rights. We would have volumes and volumes for that one particular policy. But the superintendent, under its – his guidelines that he is required to follow another policy, which is in evidence, is that he is to make sure that he follows the law and that he would seek advice and counsel in so doing. And with this particular balance of free speech as well as the Establishment Clause violation or the tattoo policy as we were using, it was taken very seriously. It was not something that was done quickly. But we knew that we could not have tattoos on the jumbotron because it was against state law and it was against our policy. Okay? Thank you, Matt. Mr. Tedesco. Thank you, Your Honors. First, the school district's counsel stated that the request, the offer to run the ad without tattoos was not in writing. They stipulated that the offer was made to run the ad without tattoos. In our letter at page 1419 of the record, we also convey in writing the offer to run the ad without the tattoos. I think that's an important point. I also wanted to address the fact that the school district has stipulated that Little Pencil is a for-profit company. And they conceded in the court below that the advertisement is a commercial advertisement. At the record of 234, 255, and 259, those concessions are made. And I think that's key to this case. Again, even if the court looks at only the jumbotron, this is a commercial advertisement and the ad has been excluded because of its religious perspective. I also think it's important that the school district's counsel conceded, Your Honor, that they do solicit ads from churches for the jumbotron. And as far as Santa Fe is concerned, this case is completely different. Santa Fe found that it was government speech, not private speech in that case, and it did so for two reasons. One, the policy on its face invited and encouraged public prayer. And the court found that the sole purpose of the school district in that case was to preserve the state-sanctioned practice of prayer before football games. That's clearly not what's going on here. Here the school district has created what the district court found correctly to be a limited public forum for speech of outside organizations to advertise any non-school-related purpose. And I think that's critical. Another point I wanted to make was just about the captive audience argument. I think Morgan v. Swanson in the Murgans case from the United States Supreme Court dispatches that argument completely. In Morgan, you had a classroom-sanctioned Christmas party occurred in an elementary school. The students were compelled, of course, by compulsory education laws to be in school. And the child was engaging in cross-sanctizing religious speech, promoting a relationship with Jesus Christ with his classmates. If captive audience concerns are not sufficient to overcome free speech rights in that context, they certainly are not here, where it's a community-wide event. It's an after-school event, and most of the audience is made up of adults who are voluntarily in attendance. Finally, Your Honors, I'd just like to point out that the school district says they denied the ad because it's controversial. Controversy is clearly a viewpoint-based rationale for excluding speech. It goes to exactly one of the key problems in this case, and that is that the school district has a prior restraint. There are no standards whatsoever in this policy. It's completely unbridled and unfettered discretion for the school district to approve or deny ads. And, of course, here that resulted in religious viewpoint discrimination. Thank you, Your Honors. Yes, sir. Thank you. That completes the arguments that we have on the oral argument calendar for this morning. So this panel will stand in recess until tomorrow morning at 9 o'clock.